
IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

PHILADELPHIA INDEMNITY
INSURANCE COMPANY
One Bala Plaza
Suite 100
Bala Cynwyd, PA 19004,

    Plaintiff,

v.                                                Civil Action No. 18-cv-02365

LEXINGTON INSURANCE COMPANY
100 Summer Street
Boston, MA 02110

Serve on:
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

and

COMMERCE AND INDUSTRY
INSURANCE COMPANY/
AIG
175 Water Street
New York, NY 10038

Serve on:
Corporation Service Company
80 State Street
Albany, NY 12207

    Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Philadelphia Indemnity Insurance Company brings this Complaint for Declaratory Judgment against Lexington Insurance Company and Commerce & Industry Insurance Company and states as follows:

## PARTIES

1.　　Philadelphia Indemnity Insurance Company ("PIIC") is a corporation organized and existing in the Commonwealth of Pennsylvania.

2.　　Lexington Insurance Company ("Lexington") is a corporation registered, organized and existing in the State of Delaware.

3.　　Commerce & Industry Insurance Company ("Commerce") is a corporation registered, organized and existing in the State of New York.

## THE UNDERLYING CASE

4.　　Edgewood Management Corporation ("Edgewood") entered into a contract with Mayfair Mansions Limited Partnership ("Mayfair Mansions") by which Edgewood agreed to provide property management services for the Mayfair Mansions Apartments, located at 3744½ Hayes Street, N.E., Washington, DC.

5.　　On October 3, 2014, a shooting occurred at Mayfair Mansions, resulting in injury to a minor after he was struck in the head by a bullet from someone's gun.

6.　　Monique Nichols filed suit on behalf of her minor son against Mayfair Mansions, Edgewood, MM Property LLC, E&G Property Services, and Code 3 Security and Protections Services, Inc., alleging negligence in failing to provide adequate security. That case is pending in the Superior Court for the District of Columbia, known as *Nichols v. MM Property, LLC*, et al., Case No. 2015 CA 0002608 B ("the Nichols case").

7.　　PIIC insures Edgewood Management Corporation, a Defendant in the Nichols case.

8.　　Lexington insures Mayfair Mansions, a Defendant in the Nichols case, through a policy of primary insurance, Policy No. 114633702014G.

9.     Commerce insures Mayfair Mansions, a Defendant in the Nichols case, through a policy of excess insurance, Policy No. BE 011954280.

## JURISDICTION

10.    Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, the matter in controversy involves a declaration of the rights, duties, and obligations under an insurance policy.

11.    This Court has jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00 and is between citizens of different states.

## VENUE

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and because the insurance contract in dispute was issued in this judicial district.

## THE INSURANCE POLICY

13.    PIIC issued a standard general liability policy to Edgewood, Policy Number PHPK1093490, effective dates November 1, 2013 through November 1, 2014 ("PIIC's Policy"). PIIC's Policy has a $1 million each occurrence limit and "personal and advertising injury" limit and a $2 million general aggregate limit.

14.    PIIC's Policy contains the following excess endorsement (Form PI-MANU 01/00):

**REAL ESTATE PROPERTY MANAGED-EXCESS ONLY INSURANCE COVERAGE**

This insurance does not apply to "property damage" to property you operate or manage including, but not limited to services rendered as an agent for the collection of rents or in any other administrative, managerial or supervisory capacity. All such services identified in this paragraph shall be referred to herein as "Property Management Services".

With respect to "bodily injury" or "personal and advertising injury liability" arising out of your rendering Property Management Services for third parties, this policy only affords excess insurance

coverage. This policy shall not be called upon to provide defense or indemnity for any claim(s) alleging "bodily injury" or "personal and advertising injury liability" unless and until *all other insurance affording coverage for such claim(s), including coverage afforded under primary or excess insurance policies* issued to you as a named or additional insured, and coverage afforded under primary or excess policies under which you otherwise have status as an insured, has been exhausted. (Emphasis added).

15. Lexington issued a standard Commercial General Liability policy to Mayfair Mansions, Policy Number 114497422014G, effective dates January 1, 2014 through January 1, 2015 ("Lexington Primary Policy"). Lexington's Primary Policy has limits of $1 million per occurrence and $2 million in the aggregate.

16. Lexington's Primary Policy covers Edgewood, the property manager, under the policy's **Who Is an Insured** provision, which defines an insured as "any person…or any other organization while acting as your real estate manager."

17. Lexington's Primary Policy includes an **Other Insurance** provision, which makes the policy the primary policy except in specific circumstances which do not apply here.

18. Commerce issued a Commercial Excess Liability Policy to Mayfair Mansions, Policy Number BE 011954280, effective dates January 1, 2014 through January 1, 2015, ("Commerce Excess Policy"). The Commerce Excess Policy has limits of $10 million per occurrence and in the aggregate, excess of primary coverage.

19. The Commerce Excess Policy covers Edgewood under the following definition: "Insured means…any person or organization, other than the Named Insured, included as an additional insured under Scheduled Underlying Insurance, but not for broader coverage than would be afforded by such Scheduled Underlying Insurance."

20. The Commerce Excess Policy contains the following **Other Insurance** provision: "If other valid and collectible insurance applies to damages that are also covered by this policy,

this policy will apply in excess of the Other Insurance. However, this provision will not apply if the Other Insurance is specifically written to be excess of this policy."

COUNT ONE

THE PRIORITY OF POLICIES IS LEXINGTON'S PRIMARY POLICY FIRST, FOLLOWED BY THE COMMERCE EXCESS POLICY

21. Pursuant to the **Who Is an Insured** provision in Lexington's Primary Policy, Edgewood is an insured under Lexington's Primary Policy by virtue of its status as the Mayfair Mansions property manager.

22. The terms of **Real Estate Property Managed-Excess Only Insurance Coverage** endorsement in PIIC's Policy unambiguously state that PIIC's coverage, as to bodily injury, will be excess of all other insurance "including coverage afforded to under primary or excess insurance policies". This endorsement renders the Lexington Primary Policy the primary policy and first in the priority of the three applicable policies.

23. The aforementioned excess endorsement in PIIC's Policy also states that PIIC's Policy "shall not be called upon to provide defense or indemnity…unless and until all other insurance affording coverage for such claim(s), *including coverage afforded under…excess insurance policies* issued to you as a named or additional insured, and *coverage afforded under…excess policies under which you otherwise have status as an insured,* has been

exhausted," (emphasis added), requiring that PIIC's Policy is also excess to the Commerce Excess Policy.

24.  The **Real Estate Property Managed-Excess Only Insurance Coverage** endorsement in PIIC's Policy, referenced above, therefore renders PIIC's Policy excess of both the Lexington Primary Policy and the Commerce Excess Policy.

COUNT TWO

ALTERNATIVELY, THE PRIORITY OF POLICIES SHOULD BE THE LEXINGTON PRIMARY POLICY FIRST, AND THE COMMERCE EXCESS POLICY AND PIIC'S PRIMARY POLICY TREATED EQUALLY AS SECOND, *PRO RATA*

25.  Should the Court disagree that the Commerce Excess Policy is prioritized over PIIC's Policy, the Commerce Excess Policy and PIIC's Policy should be considered equal in priority, and thus share any excess indemnity exposure *pro rata*.

26.  The Commerce Excess Policy has limits of $10 million and PIIC's Policy has limits of $1 million. Sharing any excess indemnity exposure *pro rata*, the Commerce Excess Policy would therefore be responsible for 90% of the indemnity exposure, and PIIC's Policy would be responsible for 10% of the indemnity exposure.

WHEREFORE, Philadelphia Indemnity Insurance Company requests that the Court enter judgment in its favor and against Lexington Insurance Company and Commerce & Industry Insurance Company and declare the following:

1.  The Lexington Primary Policy is the primary policy from which any indemnification required as a result of the Nichols case must be paid.

2. The Commerce Excess Policy is second in priority, and first layer excess policy from which any indemnification required as a result of the Nichols case must be paid.

3. Philadelphia Indemnity Insurance Company requests that the Court grant such other and further relief as the Court deems appropriate.

*Margaret Fonshell Ward*
Margaret Fonshell Ward (422906)
Ward & Herzog, LLC
102 W. Pennsylvania Avenue, Suite 401
Baltimore, MD 21204
410-296-1573
410-296-1576 - f
mward@wardherzog.com
***Attorneys for Plaintiff Philadelphia Indemnity Insurance Corporation***